RICHARD S. EKIMOTO      3827-0
JOHN A. MORRIS          3732-0
DAN C. OYASATO          4834-0
Ekimoto & Morris LLLC
1001 Bishop Street, Suite 780
Honolulu, Hawaii 96813
Tel. No.: (808) 523-0702
E-mail: rekimoto@hawaiicondolaw.com
        jmorris@hawaiicondolaw.com
        doyasato@hawaiicondolaw.com

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

DEC 12 2011

at 1 o'clock and 40 min. PM
SUE BEITIA, CLERK

Attorneys for Plaintiff
ASSOCIATION OF APARTMENT
OWNERS OF LILIUOKALANI
GARDENS AT WAIKIKI

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| ASSOCIATION OF APARTMENT OWNERS OF LILIUOKALANI GARDENS AT WAIKIKI, a Hawai`i nonprofit corporation, by its Board of Directors,<br><br>    Plaintiffs,<br><br>  vs.<br><br>JOEL LEE TAYLOR,<br><br>    Defendant. | CIVIL NO. CV 11 00751 LEK BMK<br><br>Declaratory Judgment<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT; DEMAND FOR TRIAL BY JURY; SUMMONS** |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff ASSOCIATION OF APARTMENT OWNERS OF

LILIUOKALANI GARDENS AT WAIKIKI ("Plaintiff"), by its Board of

Directors and through its attorneys Ekimoto and Morris, a limited liability law company, brings this civil action for declaratory judgment and respectfully alleges and avers as follows:

## INTRODUCTION

1.     This action involves a dispute between an association of apartment owners of a condominium project and an owner who claims to suffer from a disability over whether the Fair Housing Act (the "FHA"), as amended under 42 U.S.C. §§3601, *et. seq.*, and the State of Hawai`i counterpart, the Discrimination in Real Property Transactions Act under Chapter 515 of the Hawai`i Revised Statutes ("HRS"), requires the association to make a reasonable accommodation to its no pet policy to allow the owner to keep his emotional support dog.

2.     Plaintiff questions whether the owner suffers from a handicap as defined under 42 U.S.C. §3602(h) or a disability under HRS §515-2[1], and submits that even assuming the owner qualifies as a disabled person under the FHA, Plaintiff is not required under 42 U.S.C. §3604(f)(3)(B) or HRS 515-3(11), or any other provisions of the FHA or its Hawai`i counterpart, to waive its no pet policy

---

[1]  The Fair Housing Act uses the term "handicap" while the Hawaii Discrimination in Real Property Transactions Act uses the term "disability".   The respective definitions of these terms are essentially identical.  For purposes of this Complaint, the terms "disability" and "disabled" will be used in place of the terms "handicap" and "handicapped, except where specifically referring to the language in the FHA, because those terms have been viewed to be more socially acceptable.  See *Helen D. v. DiDario*, 46 F.3d 325, 330 n. 8 (3d Cir. 1995).

and permit the owner to keep a dog that has not received any training which would make it particularly suited to ameliorate the unique problems of the owner's disabilities.

3.     The owner conversely maintains that he is disabled under the FHA and posits that an animal that provides emotional support and comfort to its disabled owner, whether or not the animal is trained, is a necessary assistance animal under the reasonable accommodation provisions of the FHA.

4.     This is an actual controversy relating to the Plaintiff's legal obligations as they relate to a purportedly disabled owner's request for an accommodation under the FHA and its Hawai`i counterpart, and Plaintiff therefore seeks a declaratory judgment from this Court as to whether an accommodation is required under federal or State of Hawai`i law, prior to its granting or denying the accommodation requested by the owner.

## THE PARTIES

5.     Plaintiff is, and at all relevant times was, a Hawai`i nonprofit incorporated association of apartment owners managing the Liliuokalani Gardens at Waikiki condominium project (the "Project"), organized and existing pursuant to HRS Chapters 514A, 514B and 414D, as amended.

6.     Plaintiff, through its Board of Directors (the "Board"), is responsible for the operation and management of the Project which is located at 300 Wai Nani

Way, on the island of Oahu, in the City and County of Honolulu, State of Hawai`i.

7.   Upon information and belief, Unit No. 1019 (the "Unit") in the Project is owned by the Taylor Family Trust dated October 8, 1986, whose address is 1925 29th Street, San Diego, California (the "Trust").

8.   Defendant JOEL LEE TAYLOR ("Defendant") is one of the trustees for the Trust and resides in the Unit.

## JURISDICTION AND VENUE

9.   Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§1331, 2201 and 2202, and arises under the Constitution and the provisions of the Fair Housing Act, 42 U.S.C. §3601, *et. seq.*

10.   Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1) and (2).

## DECLARATORY JUDGMENT

### The Project Documents

11.   The Project was established by HRS Chapter 514A, as amended, and is subject to HRS Chapters 514A and 514B, as amended, pursuant to that certain Declaration of Horizontal Property Regime of Liliuokalani Gardens at Waikiki dated March 1, 1983, and filed in the Office of the Assistant Registrar at the Land Court of the State of Hawai`i ("Land Court") as Document No. 1155070 (the "Declaration"), as well as the Bylaws of the Association of Apartment Owners of

Liliuokalani Gardens at Waikiki dated March 1, 1983, and filed in the Land Court as Document No. 1155071 (the "Bylaws").

12.  The Declaration was restated by the Restatement of Declaration of Condominium Property Regime of Liliuokalani Gardens at Waikiki dated November 3, 1994, and filed in the Land Court as Document No. 2212907 (the "Restated Declaration").

13.  The Bylaws were first restated by the Restatement of By-Laws of the Association of Apartment Owners of Liliuokalani Gardens at Waikiki dated November 3, 1994, and filed in the Land Court as Document No. 2212907.

14.  The Bylaws were restated a second time by the Second Restated Bylaws of the Association of Apartment Owners of Liliuokalani Gardens at Waikiki dated November 9, 2011, and filed in the Land Court as Document No. 4116465 (the "Second Restated Bylaws").

15.  Pursuant to Article III, Section 2(f) and Article X, Section 1 of the Second Restated Bylaws, the Board adopted the Liliuokalani Gardens at Waikiki Rules and Regulations (the "House Rules").

16.  The Declaration, the Bylaws, and their respective restatements, along with the House Rules constitute the Plaintiff's Project Documents ("Project Documents").

17.  HRS §514B-112 subjects all unit owners, tenants and any other

persons who use the Project to HRS Chapter 514B, the Declaration, and the Bylaws, and binds all of them to all agreements, decisions and determinations which are legally made by the Association.

18.     HRS §514B-112(c) additionally requires that all owners, tenants and other persons using the property strictly comply "with the covenants, conditions, and restrictions set forth in the declaration, the bylaws, and the house rules adopted pursuant thereto. . . ."

19.     Section 13 of the Restated Declaration binds and requires all apartment owners, tenants, guests and other persons using the Project to strictly comply with the Declaration, Bylaws and all agreements, decisions and determinations of the Association as lawfully made or amended.

20.     Article I, Section 3 of the Second Restated Bylaws requires all owners, tenants and occupants to strictly comply with the Declaration, Bylaws and House Rules.

21.     Article V, Section 7(k) of the Second Restated Bylaws and section I, subsection K of the House Rules prohibit any animals to be allowed or kept at the Project, with exceptions for visually impaired persons to keep certified seeing-eye dogs, hearing impaired persons to keep certified signal dogs, and physically impaired persons to keep certified service dogs in their apartments (collectively "no pet rules").

22.    The no pet rules state that they are not intended to limit or restrict access to or interfere with the use and enjoyment of the Project by disabled persons.

## The Dispute

23.    Upon information and belief, Defendant considered purchasing a unit in the Project in 2009 while he was living in San Diego, California.

24.    Upon information and belief, Defendant was aware of Plaintiff's no pet rules and entered into a purchase agreement at that time for a different unit in the Project which he conditioned on being permitted to keep his dog as an accommodation for his mental disability.

25.    On or about July 2009, Defendant requested an accommodation be made to Plaintiff's no pet rules, permitting him to keep his dog on the Project.

26.    Upon information and belief, as part of its consideration of Defendant's request for an accommodation, Plaintiff provided Defendant a questionnaire to be completed by a physician or other competent expert to provide information for the Board to consider in evaluating whether an accommodation was necessary and appropriate.

27.    Upon information and belief, Dr. Alex E. Torres, M.D. ("Dr. Torres") responded to the questionnaire, however some of his responses were incomplete and others were unclear.

28.     Dr. Torres indicated that Defendant suffers from "agarophobia [sic] and social phobia---permanent condition".

29.     In response to the question: "What major life activity or activities are the subject of Patient's disability or record of disability?" Dr. Torres' answered:

> Neuro-science report establishes a brain chemistry imbalance.   Epinephrine is very low, dopamine is optimal, serotonin is very low.   Very low levels of serotonin promote agarophobia [sic] and social phobia. "Caring for oneself" is possible with his service dog.

30.     Dr. Torres failed to indicate how the requested accommodation would alleviate or mitigate Defendant's disability or otherwise assist him in using and enjoying the dwelling.   Dr. Torres instead indicated "[i]t would provide a safe haven from outside stress and allowing [sic] a refuge from the outside world."

31.     Dr. Torres was further unclear on why the requested accommodation was necessary to afford Defendant equal opportunity to use and enjoy the dwelling.

32.     The questionnaire was also unclear as to what training, if any, Defendant's dog had received.

33.     Upon information and belief, although Dr. Torres' responses to the questionnaire were dated August 3, 2009, Defendant did not provide the responses to the Association at that time.

34.     Upon information and belief, Defendant did not follow through with the 2009 purchase agreement.

35.   Upon information and belief, almost twenty-one (21) months later, on or about April 27, 2011, Defendant purchased the Unit through the Trust.

36.   Upon information and belief, around September 2011, Defendant renewed his request for an accommodation to the no pet rules to permit him to keep his dog ("Nell") at the Project, at which time he provided Dr. Torres' 2009 responses to the questionnaire.

37.   Upon information and belief, efforts by the Association to contact Dr. Torres for further information were unsuccessful, as he had temporarily moved to Puerto Rico.

38.   Despite Plaintiff's willingness to allow Defendant to supplement the information he provided to Plaintiff, Defendant did not submit any additional medical information that would indicate Defendant suffers from a physical or mental impairment which substantially limits one or more of his major life activities, has a record of having such an impairment, or is regarded as having such an impairment.

39.   Upon information and belief, Nell has not received any training to do work or perform tasks which ameliorate any of the Defendant's symptoms or conditions.

40.   When Defendant was asked what services his dog provides and in particular, the services provided by his dog that mitigate Defendant's disability or

assist Defendant in using and enjoying a dwelling, Defendant replied that "she must be quartered with me so as to be on call when I am required to engage with the general public to care for myself. . . I refer you to the training required to act as an 'emotionally supportive' Service Dog.   There is none other than being a calming support in stressful situations".

41.    Upon information and belief, Nell does not provide Defendant any assistance or perform any tasks for the benefit of Defendant's purported disability other than acting in the capacity of "a companion" or pet whose mere presence allows Defendant "to function in a calm collected manner in crowded environments such as airline travel and grocery stores".

42.    Upon information and belief, Defendant moved into the Unit with Nell on or about November 9, 2011.

43.    Plaintiff has authorized Defendant to keep Nell in his unit pending resolution of this action for declaratory relief, provided:

      a.    Nell remains on a leash under control or in an animal carrier and is not allowed to roam freely while on the common elements of the Project.

      b.    Defendant takes full responsibility for Nell and any damages or injuries caused by her, and maintains liability insurance naming the Association as a certificate holder on the policy.

      c.    Nell is not permitted to defecate or urinate at the project.

d.    Nell may not disrupt the quiet enjoyment of other residents, guests and employees of the project.

e.    Nell may not be washed in the showers in the pool area.

f.    Unless Defendant gets prior approval from the Board, Nell is not permitted to go into any of the laundry rooms or to stand on the common area furniture.

g.    Unless Defendant gets prior approval from the Board, Nell must be kept within Defendant's unit except when in transit, and then by way of the shortest possible route when taking her to and from his unit, with exit only through the Wai Nani Street side of the Project.

h.    If Nell poses a nuisance, Defendant will be asked to remove the dog from the project.

i.    Defendant does not have the right to replace the dog upon the dog's death.

WHEREFORE, Plaintiff respectfully requests a declaratory judgment as follows:

A.    The Court declare whether Defendant suffers from a handicap as defined under 42 U.S.C. §3602(h) or a disability as defined under HRS §515-2, such that Plaintiff would be required to make a reasonable accommodation to its rules, policies, practices or services, when such accommodations may be necessary

to afford Defendant an equal opportunity to use and enjoy his dwelling and the Project under 42 U.S.C. §3604(f)(3)(B) or HRS §515-3(11).

 B. The Court declare whether Plaintiff is required to waive its no pet rules to permit Defendant to keep Nell in the Unit.

 C. The Court further declare the respective additional rights and duties of Plaintiff and Defendant pursuant to Fair Housing Act, 42 U.S.C. §3601, *et. seq.*, and the State of Hawai`i Discrimination in Real Property Transactions Act under HRS Chapter 515.

 D. The Court grant such other and further relief as it deems appropriate and proper.

 Dated: Honolulu, Hawaii, _____ December 12, 2011 _____.

RICHARD EKIMOTO
JOHN A. MORRIS
DAN C. OYASATO
Attorneys for Plaintiff
ASSOCIATION OF APARTMENT
OWNERS OF LILIUOKALANI
GARDNES AT WAIKIKI