IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

ASSOCIATION OF APARTMENT      )   CIVIL NO. 11-00751 LEK-BMK
OWNERS OF LILIUOKALANI        )
GARDENS AT WAIKIKI, a Hawaii  )
nonprofit corporation, by its )
Board of Directors,           )
                              )
          Plaintiffs,         )
                              )
     vs.                      )
                              )
JOEL LEE TAYLOR,              )
                              )
          Defendant           )
_____)

**ORDER DENYING DEFENDANT/COUNTERCLAIM PLAINTIFF JOEL LEE TAYLOR'S
MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING PLAINTIFF
ASSOCIATION OF APARTMENT OWNERS OF LILIUOKALANI GARDENS AT
WAIKIKI'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND DENYING
JOINDER IN MOTION FOR PARTIAL SUMMARY JUDGMENT BY COUNTERCLAIM
DEFENDANT ASSOCIATION OF APARTMENT OWNERS OF LILIUOKALANI GARDENS
AT WAIKIKI**

Before the Court is Defendant/Counterclaim Plaintiff

Joel Lee Taylor's ("Taylor") Motion for Partial Summary Judgment

("Taylor Motion"), filed on May 18, 2012.  [Dkt. no. 26.]  The

Hawai'i Civil Rights Commission ("HCRC") filed its Brief of

*Amicus Curiae* Hawai'i Civil Rights Commission in Support of

Defendant's Motion for Partial Summary Judgment Filed on May 18,

2012 ("HCRC Brief"), on June 19, 2012.  [Dkt. no. 42.]  Plaintiff

Association of Apartment Owners of Liliuokalani Gardens at

Waikiki, a Hawai'i nonprofit organization, by its Board of

Directors ("AOAO"), filed its memoranda in opposition to the

Taylor Motion and the HCRC Brief on July 2, 2012.  [Dkt. nos. 43,

47.]  Taylor filed his reply on July 9, 2012.  [Dkt. no. 49.]

Also before the Court is the AOAO's Motion for Partial Summary

Judgment ("AOAO Motion"), filed on May 21, 2012.  [Dkt. no. 31.]

The AOAO, as counterclaim defendant, filed its Joinder in Motion

for Partial Summary Judgment ("AOAO Joinder") on May 21, 2012.

[Dkt. no. 30.]  Taylor filed his memorandum in opposition on

July 7, 2012, [dkt. no. 45,] and the AOAO did not file a reply.

These matters came on for hearing on July 23, 2012.  Appearing on

behalf of the AOAO were Dan C. Oyasato, Esq., and Lissa H.

Andrews, Esq; appearing on behalf of Taylor were

Christopher Brancart, Esq., and Leba Kaufmann, Esq.; and

appearing on behalf of the HCRC was Livia A. Wang, Esq.  After

careful consideration of the motions, supporting and opposing

memoranda, and the arguments of counsel, the Taylor Motion is

HEREBY DENIED without prejudice, and the AOAO Motion and AOAO

Joinder are HEREBY DENIED without prejudice, for the reasons set

forth below.

<u>**BACKGROUND**</u>

Taylor purchased an apartment in the Liliuokalani

Gardens at Waikiki condominium project ("Liliuokalani Gardens")

in 2011.[1]  [Complaint at ¶¶ 7, 35.]  The AOAO represents that

Taylor had first considered purchasing a unit in Liliuokalani

_____

[1] Neither motion provides much factual background, so the
Court draws heavily from the original Complaint.  [Dkt. no. 1.]

2

Gardens in 2009 and at that time was aware of the AOAO's no-pets
policy. [Id. at ¶¶ 23-24.] Taylor entered into a purchase
agreement but conditioned the purchase on being able to keep his
dog, Nell, as an accommodation for his mental disability. [Id.
at ¶ 24.]

In or around July 2009, in response to Taylor's request
that the AOAO make an accommodation to its no-pets policy, the
AOAO gave Taylor a questionnaire to be completed by a physician
to provide information for the AOAO to consider in evaluating
whether an accommodation is necessary and appropriate. [Id. at
¶¶ 25-26.] Alex E. Torres, M.D. ("Dr. Torres") responded to the
questionnaire, but the AOAO claims that "some of his responses
were incomplete and others were unclear." [Id. at ¶ 27.] Dr.
Torres indicated that Taylor suffers from "'agarophobia [sic] and
social phobia – permanent condition'." [Id. at ¶ 28.] In
response to the question "What major life activity or activities
are the subject of Patient's disability or record of
disability?", Dr. Torres stated: "Neuro-science report
establishes a brain chemistry imbalance. Epinephrine is very
low, dopamine is optimal, serotonin is very low. Very low levels
of serotonin promote agarophobia [sic] and social phobia.
'Caring for oneself' is possible with his service dog." [Id. at
¶ 29.] The AOAO contends that "Dr. Torres failed to indicate how
the requested accommodation would alleviate or mitigate

3

[Taylor's] disability or otherwise assist him in using and enjoying the dwelling.  Dr. Torres instead indicated '[i]t would provide a safe haven from outside stress and allowing [sic] a refuge from the outside world.'"  [Id. at ¶ 30 (some alterations in Complaint).]  The answers to the questionnaire also did not state what training, if any, Nell had received.  [Id. at ¶ 32.]

Taylor did not follow through with the purchase agreement in 2009, but, on or around April 27, 2011, he purchased a different unit at Liliuokalani Gardens.  [Id. at ¶ 35.]  At that time, he renewed his request for an accommodation to permit him to keep his dog in the unit and provided the AOAO with the 2009 answers to the questionnaire.  [Id. at ¶ 36.]  The AOAO was unable to contact Dr. Torres, who had apparently moved to Puerto Rico.  [Id. at ¶ 37.]  The AOAO claims that Taylor "did not submit any additional medical information that would indicate [Taylor] suffers from a physical or mental impairment which substantially limits one or more of his major life activities, has a record of having such an impairment, or is regarded as having such an impairment."  [Id. at ¶ 38.]

The AOAO states that, on information and belief, Nell has not received any training to do work or perform tasks which ameliorate any of Taylor's symptoms or conditions.  [Id. at ¶ 39.]  Taylor apparently has represented Nell's services as that:

4

> she must be quartered with me so as to be on
> call when I am required to engage with the
> general public to care for myself. . . .  I
> refer you to the training required to act as
> an "emotionally supportive" Service Dog.
> There is none other than being a calming
> support in stressful situations.

[Id. at ¶ 40.]  The AOAO contends that Nell is a "companion" or

"pet whose mere presence allows [Taylor] to 'function in a calm

collected manner in crowded environments such as airline travel

and grocery stores.'"  [Id. at ¶ 41.]

On or around November 9, 2011, Taylor moved into his

unit, and the AOAO has allowed Nell to remain in the unit pending

the outcome of this action.  [Id. at ¶¶ 42-43.]

On December 12, 2011, the AOAO filed the present action

again Taylor, arguing that Taylor does not suffer:

> from a handicap as defined under 42 U.S.C.
> §3602(h) or a disability under HRS §515-2,
> and submits that even assuming the owner
> qualifies as a disabled person under the FHA,
> Plaintiff is not required under 42 U.S.C.
> § 3604(f)(3)(B) or HRS § 515-3(11), or any
> other provision of the FHA or its Hawai'i
> counterpart, to waive its no pet policy and
> permit the owner to keep a dog that has not
> received any training which would make it
> particularly suited to ameliorate the unique
> problems of the owner's disabilities.

[Id. at ¶ 2.]

On March 12, 2012, the magistrate judge issued a

briefing schedule on motions for partial summary judgment on the

applicability and validity of Prindable v. Association of

Apartment Owners of 2987 Kalakaua, 304 F. Supp. 2d 1245 (D.

Hawai'i 2003), as it applies to the present case.   [Dkt. no. 25.]

I.   **Taylor Motion**

    A.   **Motion**

        Taylor takes the position that Senior United States District Judge Alan C. Kay's decision in <u>Prindable</u> "erroneously applied the [Americans with Disabilities Act of 1990 ("ADA")] definition of service animals to the FHA, imposing a requirement that does not exist in the text of the FHA or its implementing regulations" and "conflicts with administrative interpretations of the FHA and ADA and more recent case law."   [Mem. in Supp. of Taylor Motion at 8.]

        1.   **No FHA Limitation to Trained Animals**

        Taylor first argues that the FHA does not limit reasonable accommodations to specially trained "service animals." Taylor claims that the term "service animals" is not used in the FHA, which simply prohibits "'a refusal to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling.'"   [<u>Id.</u> (alteration Taylor's) (quoting 42 U.S.C. § 3604(f)(3)(B)).] Taylor argues that, under the FHA, "no category of accommodation request is precluded as a matter of law[,]" and "[t]he reasonable accommodation analysis is a 'highly fact-specific [inquiry], requiring case by case determination.'"   [<u>Id.</u> at 8-9 (some

alterations Taylor's) (some citations omitted) (quoting United States v. Cal. Mobile Home Park Mgmt. Co., 29 F.3d 1413, 1418 (9th Cir. 1994)).]

Taylor further argues that the FHA's implementing regulations do not contain any requirement that a service animal be specially trained.  [Id. at 9.]  The United States Department of Housing and Urban Development ("HUD"), which is charged with administering the FHA, has not promulgated any regulation that would limit reasonable accommodation under the FHA to dogs with special training.  [Id. at 9-10 (citing 24 C.F.R. § 100.204).[2]]

Taylor contends that HUD has interpreted the FHA's reasonable accommodation provision to require accommodations for non-trained emotional support animals.  He cites a case in which a HUD administrative law judge issued a decision finding that a landlord had violated the FHA by refusing to grant a mentally disabled man a reasonable accommodation to allow him to keep his emotional support cat in a no-pets apartment.  [Id. at 10 (citing

---

[2] Taylor notes that 24 U.S.C. § 100.204(b) provides an illustration of an unlawful refusal to make a reasonable accommodation: it is "'a violation of § 100.204 for the manager of [a "no pets"] apartment complex to refuse to permit [a blind applicant] to live in the apartment with a seeing eye dog because, without the seeing eye dog, the blind person will not have an equal opportunity to use and enjoy a dwelling.'"  [Mem. in Supp. of Taylor Motion at 9-10 (alterations Taylor's) (quoting 24 C.F.R. § 100.204(b), Example (I)).]  Taylor contends that the "example does not *limit* reasonable accommodations under the FHA to seeing eye dogs - the example is merely illustrative . . . ."  [Id. at 10 (emphasis in original).]

7

HUD v. Dutra, 1996 WL 657690 (HUDALJ 1996)).]  HUD also issued a memorandum in February 2011 that stated:

> [Animals] with or without training, and animals that provide emotional support have been recognized as necessary assistance animals under the reasonable accommodation provisions of the FHAct and Section 504.  The new ADA regulation does not change this FHAct/Section [504] analysis, and specifically notes, "[u]nder the FHAct, an individual with a disability may have the right to have an animal other than a dog in his or her home if the animal qualifies as a 'reasonable accommodation' that is necessary to afford the individual equal opportunity to use and enjoy a dwelling, assuming that the animal does not pose a direct threat."

[Id. at 11 (some alterations Taylor's) (some citations omitted) (quoting Taylor Motion, Exh. 1 at 2).][3]

Taylor argues that other HUD interpretations not directly applicable here evidence that animals do not need to have special training.  In 2008, regarding pet ownership by elderly persons with disabilities in HUD-assisted public housing, HUD issued a final rule that public housing can no longer require that an assistance animal have special training.  [Id. at 12 (citing 73 Fed. Reg. 63834 (Oct. 26, 2008)).]  That rule recognized that "'[s]ome animals perform tasks that require training, and others provide assistance that does not require training . . . .  [E]motional support animals do not need

---

[3] Taylor did not file a separate concise statement of facts or otherwise attach a declaration authenticating the exhibits.

training to ameliorate the effects of a person's mental and emotional disabilities.'" [Id. (alterations Taylor's) (quoting 73 Fed. Reg. 63836).]

Taylor cites to federal cases filed by the Department of Justice ("DOJ") over failures to grant reasonable accommodations to tenants with emotional support animals that lack specialized training as violations of the FHA.  He argues that, of such cases filed since 2003, "[e]ach of those has been resolved with a consent decree, settlement, or favorable jury verdict." [Id. at 13 (footnote and citations omitted).]  He also contends that the DOJ has acknowledged that the definition of "service animal" under the ADA does not affect the FHA.  [Id. at 14-15 (citing 42 U.S.C. 12134(c); 75 Fed. Reg. 56236, 56240 (Sept. 15, 2010)).]

### 2.   Interpretation of *Prindable*

Taylor argues that the district court erred in its analysis in Prindable and mistakenly relied on three cases: Bronk v. Ineichen, 54 F.3d 425 (7th Cir. 1995); Green v. Housing Authority of Clackamas County, 994 F. Supp. 1253 (D. Or. 1998); and In re Kenna Homes, 557 S.E.2d 787 (W. Va. 2001). [Id. at 15.]

Taylor argues that Prindable misread Bronk as requiring special training for assistance animals under the FHA, when the Seventh Circuit actually held that the FHA does not require that

9

an animal must have training credentials in order to be a reasonable accommodation. [Id. at 16 (citing 54 F.3d at 430).] Taylor argues that the Seventh Circuit found that the lower court had erroneously instructed the jury that the service dog had to have credentials from an accredited training school. "While professional training may have been relevant to whether the dog was able to aid the plaintiffs as a hearing dog in coping with their deafness, it was not 'its sine qua non.'" [Id. (emphasis Taylor's) (quoting 54 F.3d at 431).]

As to Green, which also involved a hearing dog, the Ohio district court applied the ADA definition of a service animal, because the case involved an ADA claim. [Id. at 16-17.] Taylor contends that Green cannot "be read to limit the reasonable accommodation provisions of the FHA to specially trained animals." [Id. at 17.]

Regarding Kenna Homes, Taylor argues that, even though the West Virginia Supreme Court applied the ADA definition of service animals to the FHA's reasonable accommodation provision, that decision is of little value because the DOJ subsequently brought suit against the same defendant, charging that its requirement of certification violated the FHA. [Id. at 17 (citing Taylor Motion, Exh. 5 (Complaint in Case No. 04-cv-00783)).] In that subsequent case, the Government and Kenna Homes entered into a consent decree in which Kenna Homes agreed

10

to change its rules to allow residents to keep both "service animals" and "emotional support animals." [Id. at 18 (citing Taylor Motion, Exh. 6 (consent decree)).]

### 3.  Subsequent Cases Reject *Prindable*

Next, Taylor argues that, subsequent to the Prindable decision in 2003, HUD and the DOJ adopted final rules clarifying that the ADA definition of "service animal" does not apply to FHA reasonable accommodation claims.  Two federal district courts then rejected Prindable and held that emotional support animals do not need specialized training to qualify as a reasonable accommodation under the FHA.  [Id.]

Taylor argues that, in Overlook Mutual Homes, Inc. v. Spencer, 666 F. Supp. 2d 850 (S.D. Ohio 2009), the district court found that the requirements for emotional support animals "'must be evaluated in the appropriate context of housing' as opposed to that of public accommodations covered by the ADA." [Id. at 18-19 (quoting 666 F. Supp. 2d at 860).]  That court concluded that an animal without specialized training could be a reasonable accommodation.  [Id. at 19.]

Similarly, Taylor argues that Fair Housing of the Dakotas, Inc. v. Goldmark Property Management, Inc., 778 F. Supp. 2d 1028 (D.N.D. 2011), agreed with the Overlook analysis and adopted the DOJ's rule that the ADA "service animal" definition was not applicable to the FHA reasonable accommodations standard.

11

That court held that "'the FHA encompasses all types of assistance animals regardless of training, including those that ameliorate a physical disability and those that ameliorate a mental disability.'" [Id. (quoting 778 F. Supp. 2d at 1036).]

### 4. State Law

Finally, Taylor argues that the Hawai'i Discrimination in Real Property Transactions Act ("HDRPTA"), which tracks the FHA and is intended to conform to federal law, does not limit reasonable accommodations to specially trained service animals. Taylor argues that, until 2011, HDRPTA made it unlawful to "'refuse to engage in a real estate transaction with a person or to deny equal opportunity to use an enjoy a housing accommodation due to a disability because the person uses the services of a guide dog, signal dog, or service animal[.]'" [Id. at 20 (quoting Haw. Rev. Stat. § 515-3(8) (repealed)).]  Effective July 1, 2011, the legislature deleted that section and its references to "guide dog," "signal dog," and "service animal." [Id. (citing 2011 Haw. Sess. Laws 175 §§ 1(5), 8 (S.B. No. 892)).]  The current law now  makes it unlawful to:

> refuse to make reasonable accommodations in
> rules, policies, practices, or services, when
> the accommodations may be necessary to afford
> a person with a disability equal opportunity
> to use and enjoy a housing accommodation;
> provided that if reasonable accommodations
> include the use of an animal, reasonable
> restrictions may be imposed.

Haw. Rev. Stat. § 515-3(9).  Taylor contends that the change in

12

language to the more general "use of an animal" bolsters the conclusion that state law does not limit reasonable accommodations to specially trained animals.  [Mem. in Supp. of Taylor Motion at 21.]

Similarly, Taylor argues that the HCRC issued a memorandum on July 25, 2011 to clarify that "assistance animals include 'animals that provide emotional support that alleviates one or more symptoms or effects of a person's disability.'"  [Id. (quoting Taylor Motion, Exh. 7).]

## B.   AOAO's Memorandum in Opposition to the Taylor Motion

### 1.   Interpretation of *Prindable*

The AOAO argues that Taylor takes an overly narrow reading of Prindable.  It contends that Taylor "limits his focus to that portion of the Court's decision that imports the ADA definition of service animals into its FHA analysis . . . .  This nearsighted reading of the Court's decision fails to credit the Court's insight into the larger picture of what is required for an animal to be a reasonable and necessary accommodation under the FHA."  [Mem. in Opp. to Taylor Motion at 3-4.]  The AOAO argues that "critics of Prindable have failed to grasp the foundation upon which Prindable was drafted, that in order for an animal to be a reasonable and necessary accommodation under the FHA, the animal needs to have something that sets it apart from the ordinary pet."  [Id. at 4.]  It notes that the Prindable

13

court's adoption of the ADA's definition of "service animal" was
a logical minimum standard, not a limitation of the animals that
fall within § 3604(f)(3)(B):

> Plainly, most animals are not equipped
> "to do work or perform tasks for the benefit
> of an individual with a disability."  There
> must instead be something – evidence of
> individual training - to set the service
> animal apart from the ordinary pet.  The
> primary handicap at issue in this case is
> mental and emotional . . . rather than
> physical in nature.  It therefore follows
> that the animal at issue must be peculiarly
> situated to ameliorate the unique problems of
> the mentally disabled.  This is not a taxing
> requirement, however, and there are no
> federally-mandated animal training standards.

[Id. at 5 (alterations AOAO's)(quoting Prindable, 304 F. Supp. at
1256).]  The AOAO contends that "[t]he use of the ADA definition
of 'service animal' was merely a conduit to the global conclusion
that there had to be something more about the animal that
distinguishes it from the ordinary pet."  [Id.]  It argues that,
"even if not individually trained, if the dog had some ability
that was peculiarly suited to ameliorate the unique problems of
the mentally challenged, that could meet the requirement that the
dog was necessary to afford a disabled person an equal
opportunity to use and enjoy their dwelling."  [Id. at 5-6.]  In
other words, the Prindable court "merely required that there be
something that sets the animal apart from the ordinary pet."
[Id. at 6 (citing Prindable, 304 F. Supp. 2d at 1256).]

14

Next, the AOAO argues that the FHA does not require accommodations that provide an increased benefit or greater opportunity beyond those provided to a person without a handicap. It argues that a reasonable accommodation is only necessary if, without the accommodation, the disabled person will likely be denied an equal opportunity to enjoy the housing of their choice. [Id. (citing Smith & Lee Assocs. v. City of Taylor, 102 F.3d 781, 795 (6th Cir. 1996)).]  To this end, the AOAO argues that Prindable sets the minimum standard necessary to demonstrate the link between the animal and the condition the animal purportedly ameliorates.  Without such a standard, there would be no way to discern whether the animal provided any appreciable benefit to the owner that would afford him or her an equal opportunity to use and enjoy his dwelling.  "In other words, it is that individual training the animal received or that special skill the animal possesses that links the animal directly to the effects of the disability and makes the animal necessary for purposes of the FHA." [Id. at 7.]

The AOAO contends that the FHA does not require accommodations that "'increase a benefit to a handicapped person above that provided by a nonhandicapped person with respect to matters unrelated to the handicap[.]'" [Id. (quoting Bryant Woods Inn v. Howard Cnty., 124 F.3d 597, 604 (4th Cir. 1997) (citing Schwarz v. City of Treasure Island, 544 F.3d 1201, 1226

(11th Cir. 2008)).]  According to the AOAO, "[i]f the animal
provides the disabled person with a benefit that a nondisabled
person would not be able to receive that is unrelated to the
disability, then the accommodation is not necessary." [Id. at 7-
8.]  In other words, if an animal provides comfort and
companionship to an owner not in need of those benefits and
similar benefits are not provided to nondisabled owners, the
animal would not qualify as a reasonable accommodation.
Prindable ensures that there is a link between the disability and
the benefits of the accommodation.  [Id. at 8-9.]

     Furthermore, the AOAO argues that the unreported cases
and consent decrees cited by Taylor should be disregarded, as
unreported cases carry no precedential value.  [Id. at 9 (citing
Hart v. Massanari, 266 F.3d 1155 (9th Cir. 2001)).]  The AOAO
urges the Court to disregard the consent decrees, which are the
products of negotiation and compromise by the parties that are
confined to the four corners of the decree.  [Id. at 10 (citing
United States v. Armour & Co., 402 U.S. 673, 681-82 (1971)).]

          2.    **State Law Consistent with *Prindable***

     The AOAO maintains that Taylor's argument that the
recent changes to the HDRPTA support the conclusion that state
law does not limit reasonable accommodations to trained animals
is pure conjecture.  The AOAO argues that there is no indication
that such changes were made in response to Prindable or related

reasoning, and the state legislature did not indicate that it intended to confer such rights upon disabled persons.  [Id. at 10-11.]  The AOAO contends that "[t]he Hawaii Legislature had the opportunity to be more specific and afford greater rights that [sic] those provided under federal law, and chose simply to indicate that it intended to conform to federal law."  [Id. at 12.]

    C.    **HCRC's Amicus Curiae Brief in Support of Motion**

The HCRC Brief asserts that an untrained assistance animal may be a reasonable accommodation under Haw. Rev. Stat. Chapter 515, because "the relevant standard is not whether the animal has been specially trained, but whether the animal performs the disability-related assistance or provides the disability-related benefit needed by the person with the disability."  [HCRC Brief at 3.]  The HCRC urges the Court not to follow Prindable, because:

> a) the court erroneously applied the [ADA] Title III (public accommodations) service animal standards to the reasonable accommodations provision under the FHA; b) the plaintiff in Prindable only claimed that his dog was a trained service animal, and the issue of whether an untrained assistance animal can be a reasonable accommodation was never argued or decided; and c) the correct standard to determine if an animal can be a reasonable accommodation is whether the animal performs a disability-related assistance or provides a disability-related benefit needed by the person with a disability.

17

[Id.]

### 1.   Reasonable Accommodations under the FHA

        The HCRC argues that the FHA's implementing regulations
do not require that all animals used as accommodations be
specially trained.  [Id. at 4-5 (citing 24 C.F.R. § 100.24).]
The HCRC represents that HUD has held in its administrative
decisions that non-trained emotional support animals may be
reasonable accommodations if they are shown to be necessary to
alleviate the symptoms of a disability.  [Id. at 5 (citing HUD v.
Dutra, 09-93-173-8, 1996 WL 657690 (HUD ALJ Nov. 12, 1996)
(landlord violated the FHA by refusing to provide a reasonable
accommodation for a therapeutic cat for a disabled person with
fibromyalgia and anxiety); HUD v. Riverbay Corp., 02-93-0320-1,
1994 WL 497536 (HUD ALJ Sept. 8, 1994) (landlord violated FHA by
refusing to provide a reasonable accommodation for a companion
dog for a disabled person with schizoid personality disorder)).]

        The HCRC further contends that HUD regulations
governing HUD-assisted housing recognize that untrained animals
can provide assistance needed by persons with disabilities and
state that assistance animals do not require specialized training
if there is a demonstrated nexus between his or her disability
and the function that the assistance animal provides.  [Id.
(citing 73 Fed. Reg. 63835-63836 (Oct. 27, 2008)).]  The HCRC
notes that, because HUD regulations and interpretations are

18

accorded great weight, Meyer v. Holley, 537 U.S. 280, 287-88 (2003), courts have followed HUD's standards and interpretations in holding that assistance animals without specialized training may be reasonable accommodations.   [HCRC Brief at 7.]

### 2.   State Law

The HCRC represents that it has an agreement with HUD in which the state's reasonable accommodations provisions in Haw. Rev. Stat. Chapter 515 must be substantially equivalent to the FHA.  [Id. at 8-9 (citing HCRC Brief, Decl. of William Hoshijo; 24 C.F.R. § 115.201).]  Federal law is a minimum floor "beneath which state law protections against discrimination cannot drop, rather than a 'ceiling' above which state law protections cannot rise."  [Id. at 9 (citing Cal. Fed. Sav. & Loan Ass'n v. Guerra, 479 U.S. 272, 290-92 (1987)).]

As to the 2011 amendments to Haw. Rev. Stat. § 515-3, the HCRC argues that "[t]he legislative history of Hawai'i's fair housing laws shows a steady expansion of coverage for persons with disabilities, as well as the expansion of accommodations to enable such persons to use and enjoy their dwellings."  [Id. at 10.]  In 1997, HUD notified the State that the language relating to accommodations for guide, signal, and service dogs was too restrictive.  In response, the HCRC attempted to broaden the relevant statute by adding the term "service animal" and deleting any specialized training requirement.  The legislature, however,

19

chose to keep the traditional definition of "service animal," which required the animal to be trained. [Id. at 11-12 (citations omitted).]  In 2011, the legislature adopted the HCRC's recommendations to include all types of assistance animals by deleting § 515-3(8) and its references to "guide dog," "signal dog," and "service animal" and replacing with "an animal."  [Id. at 12-13 (citations omitted).]  The current statute now states that, "if reasonable accommodations include the use of an animal, reasonable restrictions may be imposed . . . ."  Haw. Rev. Stat. § 515-3.

### 3.   Interpretation of *Prindable*

Finally, the HCRC argues that the AOAO's reliance on Prindable is misplaced.  It notes that, since that decision, the DOJ and HUD have clarified that the animal standards in the ADA do not apply to the FHA.  [Id. at 15.]  Furthermore, the parties in the Kenna Homes case subsequently entered into a consent order in which Kenna Homes allowed the individual to keep her emotional support dog that did not have specialized training.  [Id. (citing In re Kenna Homes, Coop. Corp., 557 S.E.2d 787, 798 (W. Va. 2001); Overlook Homes, 666 F. Supp. 2d at 806-61)).]

The HCRC further argues that Prindable did not address whether an untrained support animal can be a reasonable accommodation under the FHA or Haw. Rev. Stat. Chapter 515, as the plaintiff in that case argued that his dog was trained to

provide emotional support, although that assertion was not supported in the record.  As such, the district court did not squarely address whether an untrained emotional support dog was a reasonable accommodation.  [Id. at 15-16 (citing Prindable, 304 F. Supp. 2d at 1256-57).]

Moreover, the HCRC states that footnote 25 of the Prindable decision "suggests that some type of training is necessary for an animal to be a reasonable accommodation, reasoning that otherwise every person with a mental disability would be entitled to the dog or animal of their choice, and there would be no logical reason to deny an accommodation for these animals."  [Id. at 16 (citing 304 F. Supp. 2d at 1257).]  The HCRC contends that "this is the wrong standard for determining whether an animal is necessary as a reasonable accommodation. . . .  [A] person . . . must demonstrate that the animal is needed to alleviate at least one identified symptom or effect of the person's disability. . . .  Special training is not required."  [Id. at 16-17 (internal footnotes and citations omitted).]

D.   **AOAO's Memorandum in Opposition to the HCRC Brief**

The AOAO's arguments in opposition to the HCRC Brief incorporate many of the arguments it raised in opposition to the Taylor Motion.

21

### 1.   <u>No Support for the HCRC's Position</u>

First, the AOAO argues that the authorities cited in the HCRC Brief do not support the HCRC's position.  Regarding the FHA and its implementing regulations, the AOAO argues that there is nothing that supports HCRC's interpretation that "reasonable accommodation" includes an animal that provides "emotional support" for a disabled person without showing anything further.  The AOAO argues that, the example of the seeing-eye dog in 24 C.F.R. § 100.204 "evidences the FHA's intent to place restrictions as to the use of service animals, and that not every emotional support animal claimed by a person with a disability qualifies as a reasonable accommodation."  [Mem in Opp. to HCRC Brief at 4.]

The AOAO also argues that the HCRC's reliance on HUD regulations, policy statements, and administrative decisions is misplaced, because those authorities are not controlling.  The AOAO argues that HUD regulations regarding HUD-assisted housing do not apply to the present case.  As for the February 2011 memo HUD issued to its agencies, the AOAO argues that it "is not controlling and cannot trump the actual interpretation of the FHA statute and it's [sic] implementing regulations."  [<u>Id.</u> at 5.]

Similarly, the AOAO argues that HUD's administrative rulings, regulations, and policy statements are not entitled to deference under the facts of this case.  Contrary to the HCRC's

22

position that HUD's interpretation of the FHA is accorded great weight, the AOAO contends that "a court's prior judicial construction of a statute 'trumps' an agency's interpretation if the prior court's decision holds that the statute is unambiguous . . . ." [Id. at 6 (citing Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs., 545 U.S. 967, 982 (2005)).]  The AOAO argues that agency interpretations contained in opinion letters, policy statements, agency manuals, and other formats that lack the force of law do not warrant deference.  [Id. (citing United States v. Mead Corp., 533 U.S. 218, 234 (2001); Christensen v. Harris Cnty., 529 U.S. 576, 586-87 (2000)).]  The AOAO contends that 24 C.F.R. § 100.204 is unambiguous, and "[t]here is nothing in the statute or implementing regulations which provides that an emotional support dog, for a person claiming a disability, is always a reasonable accommodation under the FHA." [Id. at 7.]  Rather, the AOAO argues that "[t]he question of what is a reasonable accommodation is determined on a case by case basis."  [Id.]

## 2.  Amendments to Hawai'i Revised Statutes § 515-3

Contrary to the HCRC's argument that the 2011 amendment of § 515-3 evidences the legislature's intent to include emotional-support animals as a "reasonable accommodation" the AOAO argues that "[t]he Hawaii legislature chose not to provide greater protections to persons with disabilities, and amended the

23

statute to conform with federal law." [*Id.* at 9.]   The AOAO
contends that, when the legislature amended the statute, it was
aware of the potential problems caused by emotional-support
animals, but instead chose not to mention emotional-support
animals.  [*Id.* at 8-9.]

### 3.   *Prindable's* Interpretation of the FHA

Next, the AOAO argues that the <u>Prindable</u> decision
correctly interprets the FHA for the reasons set forth in the
AOAO Motion and in its memorandum in opposition to the Taylor
Motion.  [*Id.* at 9.]

### 4.   Effect of the Consent Decrees

Finally, the AOAO argues that the settlement agreements
made by HUD and third parties have no bearing on the present
case, because the housing providers made no admissions of
liability, and the "consent decrees between housing providers and
the DOJ/HUD are settlement agreements, not adjudications of any
claims brought by the DOJ/HUD."  [*Id.*]

The AOAO requests that the Court strike and not
consider Exhibits 3, 5, 6, and 8, as they are not properly
authenticated.[4]   The AOAO contends that Rule 56(c)(2) of the
Federal Rules of Civil Procedure requires certified copies from
the issuing court.  [*Id.* at 10 (citing <u>Bias v. Moynihan</u>, 508 F.3d

---

[4] The AOAO raises this argument in its opposition to the
HCRC Brief, however, it appears to reference the exhibits to the
Taylor Motion.

1212, 1224 (9th Cir. 2007)).]

    **E.**  **Taylor's Reply**

       Taylor argues that specialized training is not necessary to ensure disabled persons receive equal opportunity. He contends that the AOAO's reliance on <u>Schwarz v. City of Treasure Island</u>, 544 F.3d 1201, 1226 (11th Cir. 2008), is misplaced, because that case "relie[d] on authorities outside of the Ninth Circuit that construe the FHA's reasonable accommodation provisions as only covering accommodations that 'address <u>the needs created by the handicaps</u>' themselves." [Reply in Supp. of Taylor Motion at 2-3 (quoting 544 F.3d at 1226 (emphasis in original)).] Taylor contends that this argument was rejected by the Ninth Circuit in <u>Giebeler v. M&B Associates</u>, 343 F.3d 1143, 1154 (9th Cir. 2003).

       Taylor contends that the "AOAO's argument rests on the faulty premise that an emotional support animal provides the exact same benefits to a disabled person as a pet would to a nondisabled person." [<u>Id.</u> at 3.] Taylor counters that, "if a disabled person is not in need of the benefits provided by an emotional support animal, then there is no need for a reasonable accommodation in the first instance, either with or without a specialized training requirement." [<u>Id.</u>]

       Second, Taylor argues that the administrative authorities he presented are properly before the Court as the

25

unpublished HUD ALJ decisions are not equivalent to unpublished Ninth Circuit decisions, but are public documents appropriate for consideration.  [Id. at 4 (citing Harris v. Itzhaki, 183 F.3d 1043, 1051 (9th Cir. 1999) (HUD's interpretation of the FHA in adjudicative proceedings is entitled to deference)).]  He argues that the Court's consideration of the consent decrees are similarly appropriate, because they are "guidance reflecting the interpretation of the FHA by the United States Department of Justice[,]" not "offered for the truth of the matters alleged in the charge of discrimination . . . ."  [Id. at 4-5.]

## II.  The AOAO Motion

### A.  Motion

The AOAO Motion seeks partial summary judgment that, before it is required to waive its no-pets policy pursuant to a reasonable accommodation request made by a disabled resident, it can require that the animal have received some individual training to do work or perform tasks for the benefit of that resident.

#### 1.  Minimum Standards Established in *Prindable*

The AOAO first recounts the standards established by this district court in Prindable.  Based on the ADA definition, the court defined "service animal" to include "'any guide dog, or other animal individually trained to do work or perform tasks for the benefit of an individual with a disability. . . .'"  [Mem. in

Supp. of AOAO Motion at 7 (alteration AOAO's)(quoting 28 C.F.R. § 36.104).]  The court concluded that "there is no evidence that would lead a reasonable jury to conclude that [the dog] is an individually trained service animal and, therefore, nothing to show that an accommodation for [the dog] may be necessary to afford [the plaintiff] an equal opportunity to use and enjoy the dwelling."  Prindable, 304 F. Supp. 2d at 1260.

## 2. *Prindable*'s Distinction between Animals as Reasonable Accommodations and Animals as Pets

The AOAO next argues that courts disagree whether an animal must be specially trained to assist a disabled person.  It cites a number of cases that agree with the reasoning in Prindable and require some evidence of individual training. [Mem. in Supp. of AOAO Motion at 8 (citing Oras v. Housing Auth. of the City of Bayonne, 861 A.2d 194, 202-03 (N.J. Super. 2004); Timberline Mobile Home Park v. Wash. State Human Rights Comm'n, 122 Wash. App. 2 896, 902 (2004); Storms v. Fred Meyer Stores, Inc., 129 Wash. App. 1 820, 826-27 (2005)).]  Conversely, the AOAO acknowledges that other courts have rejected the reasoning in Prindable that requires that the animal be held to the standards of a service animal under the ADA.  [Id. (citing Lucas v. Riverside Park Condominiums Unit Owners Ass'n, 776 N.W.2d 801, 809 (N.D. 2009); Auburn Woods I Homeowners Ass'n v. Fair Emp't & Housing Comm'n, 18 Cal. Rptr. 3d 669, 682 (2004)).]

The AOAO argues that, "[i]n their effort to discredit the <u>Prindable</u> analysis, the opposing courts have focused their attention away from the <u>Prindable</u> requirement that there be something 'to set the service animal apart from the ordinary pet,' to the Hawaii District Court's reliance on the ADA definition of 'service animal.'" [<u>Id.</u> at 10.]   It states that those courts differentiate between the ADA and the FHA and conclude that ADA regulations do not apply to residential housing governed by the FHA. [<u>Id.</u> at 9.]

### 3.   <u>Equal Opportunity versus Better Opportunity</u>

The AOAO argues that the <u>Prindable</u> court "set out to distinguish between an animal that would meet the requirement of the FHA as a reasonable accommodation and an ordinary household pet.  To that end, the Court looked to the ADA for guidance on defining what would be a minimum standard for such an accommodation." [<u>Id.</u> at 10.]

The AOAO argues that <u>Prindable</u> set a minimum standard to distinguish a pet from an animal that affirmatively enhances a disabled individual's quality of life by ameliorating the effects of his or her disability. [<u>Id.</u> at 11.]   In order to avoid allowing a disabled individual to keep a mere "pet," the AOAO contends that <u>Prindable</u> requires that the animal must have received some form of training. [<u>Id.</u> at 12.]   It argues that:

> [f]ailure to set any standard would obfuscate
> the difference between waiving a no pet

> policy for an ordinary pet as opposed to an
> animal reasonable and necessary to afford a
> disabled person equal opportunity to use and
> enjoy a dwelling.  Without a minimum
> standard, disabled persons requesting
> accommodations to no pet policies would be
> afforded greater opportunities to use an
> enjoy a dwelling than those who are not
> disabled, a situation that the FHA was never
> intended to support.

[Id. at 13.]

    B.    **Taylor's Memorandum in Opposition**

        In opposition to the AOAO Motion, Taylor incorporates

the arguments he presented in conjunction with the Taylor Motion

and argues that "the Prindable decision was wrongly decided,

relying on inapposite regulations under the [ADA]."  [Mem. in

Opp. to AOAO Motion at 4 (footnote omitted).]  Rather, he argues

that no specialized animal training is required in the housing

context.  [Id.]

        Taylor first argues that, contrary to the AOAO's

characterization of the question before the Court as whether "a

dog that has not received any training 'and does not perform any

work to ameliorate the conditions of its disabled owner' can

nonetheless be a reasonable and necessary accommodation[,]" he

argues that "whether the presence of the dog ameliorates the

effects of Taylor's disability is not a question to be addressed

in these cross-motions[.]"  [Id. at 4-5 (quoting Mem. in Supp. of

AOAO Motion at 1, 6).]  Rather, Taylor contends that "[t]he only

issue is whether an animal must satisfy the ADA definition of

'individually trained service animal' in order to trigger a reasonable accommodation duty under the fair housing laws." [Id. at 5.]

Finally, Taylor argues that, instead of "categorically deny[ing] reasonable accommodation requests for emotional support or companion animals for the mentally or emotionally disabled[,]" as urged by the AOAO, the Ninth Circuit mandates a "'highly fact-specific [inquiry], requiring case by case determination.'" [Id. at 6 (some alterations Taylor's) (quoting United States v. Cal. Mobile Home Park Mgmt. Co., 29 F.3d 1413, 1416, 1418 (9th Cir. 1994)).]

Taylor contends that the AOAO's argument that he would be entitled to a "better" opportunity - instead of an "equal" opportunity - "fails to recognize that an emotional support animal without any special training may 'affirmatively enhance[] a disabled [person's] quality of life by ameliorating the effects of the disability.'" [Id. at 7 (some alterations Taylor's) (quoting Bronk, 54 F.3d at 429).]

## STANDARD

The standard for summary judgment is well known to the parties and the Court and does not bear repeating here. See, e.g., Rodriguez v. Gen. Dynamics Armament & Technical Prods., Inc., 696 F. Supp. 2d 1163, 1176 (D. Hawai'i 2010).

## DISCUSSION

### I.   Exhibits to the Taylor Motion

The Court first addresses the AOAO's objections to Exhibits 3, 5, 6, and 8[5] to the Taylor Motion, claiming that they are not properly authenticated.  In response, Taylor argues that the complaints filed in other district courts and the HUD decision are public documents appropriate for the Court's consideration, and the consent decree is not offered for the truth of the matters asserted.  At the hearing on the present Motions, Taylor further argued that the documents are admissible under Rules 901, 902, or 201 of the Federal Rules of Evidence.

The Court agrees with the AOAO and strikes Exhibits 3, 5, 6, and 8 to the Taylor Motion.  On a summary judgment motion, the parties are obligated to provide admissible evidence:

> A trial court can only consider admissible evidence in ruling on a motion for summary judgment.  See Fed. R. Civ. P. 56(e); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988).  Authentication is a "condition precedent to admissibility," and this condition is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims."  Fed. R. Evid. 901(a).  We have

---

[5] Exhibit 3 is the Complaint in United States v. Fox Point at Redstone Ass'n, Inc. et al., Case No. 2:11CV01069.  Exhibit 5 is the Complaint in United States v. Kenna Homes Cooperative Corp., Civil Action No. 2:04-0783, and Exhibit 6 is the Consent Decree and Dismissal Order in that case.  Exhibit 8 is the Charge of Discrimination in United States Department of Housing & Urban Development v. Berry Condo Ass'n et al., HUD ALJ No. 02-0005-04-8.

> repeatedly held that unauthenticated
> documents cannot be considered in a motion
> for summary judgment.  See Cristobal v.
> Siegel, 26 F.3d 1488, 1494 (9th Cir. 1994);
> Hal Roach Studios, Inc. v. Richard Feiner &
> Co., Inc., 896 F.2d 1542, 1550-51 (9th Cir.
> 1989); Beyene, 854 F.2d at 1182; Canada v.
> Blain's Helicopters, Inc., 831 F.2d 920, 925
> (9th Cir. 1987); Hamilton v. Keystone
> Tankship Corp., 539 F.2d 684, 686 (9th Cir.
> 1976).

Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002)

(footnotes omitted).  None of the documents are authenticated,

and the Court declines to take judicial notice of those

unauthenticated documents.  Accordingly, Exhibits 3, 5, 6, and 8

to the Taylor Motion are HEREBY STRICKEN.

II.  **Application of *Prindable* to the Present Case**

     A.  **Background**

          Prindable involves separate claims for reasonable

accommodations under the FHA by two plaintiffs, John Dubois and

his partner, Timothy Prindable.  First, Dubois requested that the

defendant, Association of Apartment Owners of 2987 Kalakaua,

allow him an exception to the building's no-pets policy, because

he was concerned about his personal safety.  Before waiting for

the defendant's reply, Dubois brought a dog, Einstein, into the

his unit.  The defendant determined that "personal safety" was

not a valid justification for an exemption from the pet policy

and required Dubois to remove Einstein from the property.  Dubois

then asserted that he needed to keep a dog to "cope with the

stress, poor sleep patterns [and] problematic ailments" resulting from trauma.  Prindable, 304 F. Supp. 2d at 1249 (alteration in original).

Subsequently, Prindable requested that the defendant make an exception for Einstein, because he "has a medical illness for which a dog is necessary for his improvement."  Id. at 1249-50.  The defendant requested that Prindable provide an acceptable form of certification from a physician regarding his disability and how a pet would alleviate the effects of his handicap.  Prindable sought such diagnoses from a variety of physicians, who opined that Prindable suffered from depression and a pet would "have a positive impact on [his] condition and a separation from his pet would exacerbate his condition."  Id. at 1250.  Pending the defendant's decision, Prindable was allowed to keep Einstein in his apartment.  Shortly thereafter, Prindable filed a complaint with the HCRC, alleging that the repondents had failed to make a reasonable accommodation for him in light of his handicap.  Id. at 1251.

The district court discussed the general construction of the FHA and its test for a "reasonable accommodation."

> The 1988 amendments to the Fair Housing
> Act ("FHA"), codified at 42 U.S.C. §§ 3601 to
> 3631, make it unlawful to "discriminate
> against any person . . . in the provision of
> services or facilities in connection with
> [his] dwelling, because of a handicap" of
> that person or any person associated with
> that person.  See 42 U.S.C. §§ 3604(f)(2),

33

3604(f)(2)(A), 3604(f)(2)(C) (1994).
"Discrimination" includes "a refusal to make
reasonable accommodations in rules, policies,
practices, or services, when such
accommodation may be necessary to afford [a
handicapped] person equal opportunity to use
and enjoy the dwelling."  42 U.S.C.
§ 3604(f)(3)(B) (1994).  The FHA does not,
however, "extend a preference to handicapped
residents," United States v. California
Mobile Home Park Management Co., 29 F.3d
1413, 1418 (9th Cir. 1994), and, therefore,
"accommodations that go beyond affording a
handicapped [person] 'an equal opportunity to
use and enjoy a dwelling' are not required by
the Act."  Hubbard v. Samson Management
Corp., 994 F. Supp. 187, 191 (S.D.N.Y. 1998)
(quoting Bryant Woods Inn, Inc. v. Howard
County, 124 F.3d 597, 605 (4th Cir. 1997)).

Persons wrongfully denied a reasonable
accommodation have recourse in state or
federal court.  42 U.S.C. § 3613(a)(1)(A)
(1994).  To prevail on a claim for failure to
make a reasonable accommodation, the
plaintiff must establish (1) that he or an
associate of his is handicapped within the
meaning of § 3602(h) and, that the defendant
knew or should have known of this fact;
(2) that an accommodation may be necessary to
afford the handicapped person an equal
opportunity to use and enjoy the dwelling;
(3) that such accommodation is reasonable;
and (4) that the defendant refused to make
the requested accommodation.  See 42 U.S.C.
[§] 3604(f)(3)(B); [United States v.
California Mobile Home Park Management Co.
("California Mobile Home II"), 107 F.3d
[1374,] at 1380 [(9th Cir. 1997)]; Janush v.
Charities Housing Dev. Corp., 169 F. Supp. 2d
1133, 1135 (N.D. Ca. 2000); In re Kenna Homes
Coop. Corp., 210 W. Va. 380, 557 S.E.2d 787,
794 (2001); Bryant Woods Inn, 124 F.3d at
603.  This "inquiry is highly fact-specific,
requiring case-by-case determination."
California Mobile Home, 29 F.3d at 1418.

Prindable, 304 F. Supp. 2d at 1254 (alterations in Prindable)

(footnote omitted).

Regarding the second prong of the FHA "reasonable accommodation" analysis, the Prindable court incorporated the ADA's definition of "service animal" and stated:

> In certain circumstances, service animals may be necessary accommodations. See Bronk v. Ineichen, 54 F.3d 425, 429 (7th Cir. 1995); California Mobile Home, 29 F.3d at 1417; Fulciniti v. Village of Shadyside Condo. Ass'n, Civ. No. 9601825, 1998 U.S. Dist. Lexis 23450, at *14 (W.D. Pa. 1998 Nov. 20, 1998). The term "service animal" is not defined by the FHA or the accompanying regulations, but it is understood for purposes of the Americans with Disabilities Act of 1990 ("ADA") to include "any guide dog, or other animal individually trained to do work or perform tasks for the benefit of an individual with a disability . . . ." 28 C.F.R. § 36.104 (2002). This description comports with the example of a reasonable accommodation for a blind rental applicant provided by the agency regulations to the FHA, see 24 C.F.R. § 100.204(b) (2002), and with case law. See Bronk, 54 F.3d at 429; Green v. Housing Auth. of Clackamas, 994 F. Supp. 1253, 1256 (D. Or. 1998); In re Kenna Homes, 557 S.E.2d at 796-97. The Court agrees with and adopts the ADA definition for purposes of the reasonable accommodation requirement of § 3604(f)(3)(B).
>
> Plainly, most animals are not equipped "to do work or perform tasks for the benefit of an individual with a disability." See Bronk, 54 F.3d at 429 n.6. There must instead be something — evidence of individual training — to set the service animal apart from the ordinary pet. See id.; Fulciniti, 1998 U.S. Dist. Lexis 23450, at *6-8; Green, 994 F. Supp. at 1256; In re Kenna Homes, 557 S.E.2d at 797. The primary handicap at issue in this case is mental and emotional (specifically, depression, anxiety and

35

dizziness) rather than physical in nature.
It therefore follows that the animal at issue
must be peculiarly suited to ameliorate the
unique problems of the mentally disabled.
See Proffer v. Columbia Tower, No.
98-CV-1404-K (AJB), 1999 U.S. Dist. Lexis
16676, at *18-19 (S.D. Cal. March 4, 1999);
Green, 994 F. Supp. at 1255.  This is not a
taxing requirement, however, and there are no
federally-mandated animal training standards.
See Green, 994 F. Supp. at 1255-56.

Prindable avers that "Einstein has been
individually trained to provide emotional
support[ ] and to alert me to any unusual
circumstances." (Prindable Decl. ¶ 54); see
also id. ¶¶ 7, 19.  The record contains no
additional admissible evidence of Einstein's
qualifications as a trained service animal.
Indeed, in response to questions from the
Court, Plaintiffs' counsel acknowledged that
Einstein is not individually trained and
possesses no abilities unassignable to the
breed or to dogs in general.

"Obviously, a dog cannot acquire
discernable skills as a service dog without
some type of training." In re Kenna Homes,
557 S.E.2d at 797.  Unsupported averments
from Prindable and slight anecdotal evidence
of service are not enough (particularly in
light of counsel's candid admission) to
satisfy Plaintiffs' burden in opposition to
summary judgment.  Cf. In re Kenna Homes, 557
S.E.2d at 798.  Plaintiffs needed something
more — an affidavit detailing Einstein's
training, a declaration from Einstein's
veterinarian or a certificate from any
licensed training school — to survive summary
judgment.  See id. at 797.  Again, this is
not a heavy burden.  But the Court has
searched the record and finds nothing that
would lead a reasonable jury to conclude that
Einstein is an individually trained service
animal.

It also remains whether the AOAO's
refusal to allow an exemption from article

36

> VI, § 11 caused Prindable to be denied equal
> use and enjoyment of unit 102.  See
> California Mobile Home II, 107 F.3d at 1380.
> There is little evidence going to this
> question, but it follows that if there is no
> genuine issue of material fact as to whether
> Einstein is an individually trained service
> animal capable of assisting Prindable in a
> relevant way, there is likewise no genuine of
> issue of material fact as to whether the
> accommodation is necessary.  In other words,
> if Einstein is not a proper service animal
> (as opposed to a pet), an exemption from
> article VI, § 11 for Einstein is not
> necessary to afford Prindable an equal
> opportunity to use and enjoy the dwelling.

Id. at 1256-57 (alterations in Prindable) (footnotes omitted).

The court concluded that "there is no evidence that would lead a reasonable jury to conclude that Einstein is an individually trained service animal and, therefore, nothing to show that an accommodation for Einstein may be necessary to afford Prindable an equal opportunity to use and enjoy the dwelling."  Id. at 1260.

B.   **"Service Animal" versus "Assistance Animal"**

The parties ask the Court for a determination whether the district court's decision in Prindable is applicable to the present case so as to preclude Taylor's claim that Nell is a reasonable accommodation under the FHA.  The AOAO argues that Prindable correctly sets the minimum standard for animals as reasonable accommodations to no-pet policies.  The AOAO urges the Court to adopt Prindable's reasoning that an animal must have some evidence of individual training to be deemed a reasonable

37

accommodation.  [Mem. in Supp. of AOAO Motion at 13.]
Conversely, Taylor argues that <u>Prindable</u> is erroneous because it
"relied on inapposite regulations under the [ADA], applicable to
public accommodations, to require an emotional support animal to
have specialized training to qualify as a reasonable
accommodation in the context of private housing under the [FHA]."
[Mem. in Supp. of Taylor Motion at 1.]  Rather, he contends that
"the text of the federal and state fair housing laws and
implementing regulations, agency interpretations and persuasive
court decisions indicate that no specialized training is required
in the housing context."  [<u>Id.</u>]

　　　　As a preliminary matter, the Court considers the
development of the FHA and state law to include not only "service
animals," but "assistance animals" as reasonable accommodations.
Taylor and the HCRC have presented persuasive arguments that the
FHA has evolved to recognize "assistance animals," including
"emotional support animals," as reasonable accommodations.  They
also argue that Chapter 515 of the Hawai'i Revised Statutes
tracks federal law and has been amended to allow animals as
reasonable accommodations beyond only "service animals."  The
Court agrees that both federal and state law, while not
explicitly embracing "emotional support animals" as unequivocal
"reasonable accommodations," does not preclude them as such.  HUD
and the DOJ have shown an increasing acceptance of emotional

support animals, and Haw. Rev. Stat. § 515-3, while not explicitly mentioning emotional support animals, invites the possibility of their acceptance with the broad limitation of "use of an animal."  Accordingly, this Court acknowledges that the law has changed since Prindable was decided in 2003 by increasing acceptance of "assistance animals" as possible "reasonable accommodations."

Upon a close reading of the Prindable decision, the Court notes that Judge Kay did not confront the exact issue presently before this Court.  In Prindable, the court was presented with a resident's claim that his dog was a "service animal" under the FHA and thus a "reasonable accommodation" for his disability.  See 304 F. Supp. 2d at 1256 ("Prindable avers that 'Einstein has been individually trained to provide emotional support[ ] and to alert me to any unusual circumstances.'" (alteration in original) (citations omitted)).  It is no surprise, then, that the district court sought an applicable definition of "service animal" with which to evaluate Einstein's qualifications.  The district court did not consider the possibility of a broader definition of "assistance animal," because it was only confronted with a claim concerning a "service animal."  Upon determining that the record contained no indication that Einstein had received individual training, the court held that "there is no evidence that would lead a

39

reasonable jury to conclude that Einstein is an individually trained _service animal_ . . . ."  _Id._ at 1260 (emphasis added); _see also_ _id._ at 1257 (finding "nothing that would lead a reasonable jury to conclude that Einstein is an individually trained _service animal_" (emphasis added)).  It was only at the hearing that Prindable conceded that Einstein had not received any training and suggested that the dog's "unconditional love" was sufficient to qualify him as a service dog.  _Id._ at 1256-57 & n.25.  Plainly, the analysis in _Prindable_ was focused solely on whether Einstein was a "service animal," which requires some indicia of specialized training.

Conversely, the present case requires the Court to consider whether Nell is an "assistance animal" that, by her very presence, provides emotional support to ameliorate Taylor's disability.  As extensively briefed by Taylor and the HCRC, the concept of an "assistance animal," distinguishable from a "service animal," is a relatively recent occurrence and has become more prominent in the law in the nine years since the district court decided _Prindable_.  Because this Court is not confronting the same issue as the _Prindable_ court, it need not adopt the ADA definition of "service animal" or otherwise conclude that an untrained animal is not a reasonable accommodation per se.

Accordingly, the Court finds that <u>Prindable</u> is distinguishable from the present case.  To the extent <u>Prindable</u> focused on the characteristics of an alleged "service animal," the instant matter turns on the characteristics of an alleged "assistance animal."  In any event, this Court largely agrees with much of <u>Prindable</u>'s analysis and empathizes with the district court's struggle to differentiate an ordinary pet from an animal that provides "something more" to its disabled owner such that it can be a "reasonable accommodation" under the FHA. As this Court explained at the hearing, "[t]he framework in <u>Prindable</u> appears to be rigid.  However, the determination of being a service dog has to be more than being a pet. . . .  So what we are left with here is how that definition overlaps and is also different from one another."  [7/23/12 Hrg. Trans., filed 8/7/12 (dkt. no. 52), at 10-11.]  For the reasons discussed above, the Court FINDS that <u>Prindable</u> is distinguishable from the instant matter and CONCLUDES that its holding is inapplicable to the present case.

## III. <u>Analysis of "Assistance Animal"</u>

Having determined that <u>Prindable</u> is not controlling, the Court turns to the issue whether a pet must have individualized training to be a reasonable accommodation under the FHA.

The FHA provides that actionable housing discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]"  42 U.S.C. § 3604(f)(3)(B).  The Ninth Circuit has held that, to establish a claim of discrimination on a theory of failure to reasonably accommodate, a plaintiff is required to show:

> (1) that the plaintiff or his associate is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation.

DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua, 453 F.2d 1175, 1179 (9th Cir. 2006) (some citations omitted) (citing United States v. Cal. Mobile Home Park Mgmt. Co., 107 F.3d 1374, 1380 (9th Cir. 1997)).  The Ninth Circuit has repeatedly acknowledged that "'[t]he reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination.'"  Id. (quoting Cal. Mobile Home Park, 107 F.3d at 1380).

At the hearing on the present motions, the Court queried the parties regarding the appropriate starting point of the FHA analysis.  Taylor took the position that the analysis

42

begins with the disabled individual, [7/23/12 Hrg. Trans. at 52,] while the AOAO argued that the Court should first look at the accommodation [id. at 28].

The Court agrees with Taylor, insofar as he contends that the Court must first examine Taylor's claimed disability before it can determine whether Nell is a reasonable accommodation.  Although the Ninth Circuit has not explicitly announced the order in which to examine the five factors, it appears to address them in order.  See, e.g., Giebeler v. M & B Assocs., 343 F.3d 1143, 1147 (9th Cir. 2003) (discussing the factors in order, beginning with the plaintiff's handicap). Indeed, only by first looking at the individual and his disability can a court determine whether the requested accommodation appropriately alleviates the disability.  To start the analysis with the accommodation without reference to the disability makes it impossible to ascertain whether the accommodation is "necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling" or "reasonable."

Because the analysis must start with the disability, the Court cannot say, as a matter of law, that an untrained emotional support animal unequivocally is or is not a reasonable accommodation under the FHA.  In some instances, a plaintiff may have a disability that requires an assistance animal with some type of training; in other instances, it may be possible that no

43

training is necessary.  This determination must be the result of a fact-specific inquiry and case-by-case determination.  See Cal. Mobile Home Park, 107 F.3d at 1380.  The Court believes that this analysis ensures that only those with proper disabilities are afforded accommodations such as assistance animals; it will not, as portended by the AOAO, result in everyone who wants a pet being afforded an assistance animal, so long as they label it an emotional support animal.  Rather, because the animal must alleviate the disability, only those with disabilities will be afforded this accommodation.  See Hubbard v. Samson Mgmt. Corp., 994 F. Supp. 187, 191 (S.D.N.Y. 1998) ("accommodations that go beyond affording a handicapped [person] 'an equal opportunity to use and enjoy a dwelling' are not required by the [FHA]" (quoting Bryant Woods Inn, Inc. v. Howard County, Maryland, 124 F.3d 597, 605 (4th Cir. 1997))).

Accordingly, the AOAO Motion is DENIED to the extent it seeks summary judgment "declaring that before it is required to grant a waiver of its no pet policy pursuant to a reasonable accommodation request . . . it can require that the animal have received some individual training . . . ." [AOAO Motion at 2-3.] The Court CONCLUDES that the AOAO cannot categorically deny a reasonable accommodation request for an emotional support animal merely because the animal has not received specialized training. Similarly, while the Court agrees that the ultimate outcome in

44

Prindable is not applicable to the present case, the Taylor Motion is DENIED in that it seeks a ruling categorically stating that Nell does not need specialized training before the AOAO is required to allow him to keep Nell in contravention of the no-pets policy.  Whether Nell qualifies as an "assistance animal" or "reasonable accommodation" will depend largely on the determination of Taylor's disability and the accommodation necessary to ameliorate the effects of the disability.  This issue is not before the Court on the present motions, and, as such, the Court makes no determination whether Nell, as an untrained emotional support animal, is a "reasonable accommodation" under the FHA and relevant state laws.

## CONCLUSION

On the basis of the foregoing, Taylor's Motion for Partial Summary Judgment, filed May 18, 2012, is DENIED, and the AOAO's Motion for Partial Summary Judgment, filed May 21, 2012, and the Joinder in Motion for Partial Summary Judgment, filed May 21, 2012, are HEREBY DENIED.  Both motions are denied without prejudice.

//

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 31, 2012.



    /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**AOAO LILIUOKALANI GARDENS AT WAIKIKI, ET AL. V. JOEL LEE TAYLOR; CIVIL NO. 11-00751 LEK-BMK; ORDER DENYING DEFENDANT/COUNTERCLAIM PLAINTIFF JOEL LEE TAYLOR'S MOTION FOR PARTIAL SUMMARY; DENYING PLAINTIFF ASSOCIATION OF APARTMENT OWNERS OF LILIUOKALANI GARDENS AT WAIKIKI'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND DENYING JOINDER IN MOTION FOR PARTIAL SUMMARY JUDGMENT BY COUNTERCLAIM DEFENDANT ASSOCIATION OF APARTMENT OWNERS OF LILIUOKALANI GARDENS AT WAIKIKI**